UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TERRY WAYNE WILLIAMS,

                Plaintiff,

v.

LORETTA MALEPORT et al.,

                Defendants.

_____/

Case No. 2:24-cv-61

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.

However, the events about which he complains occurred at the Kinross Correctional Facility (KCF), which is also in Kincheloe, Chippewa County, Michigan.

Plaintiff sues KCF Corrections Officers Loretta Maleport and Cliff Shigwadja, KCF Inspector James Corrigan, Michigan State Trooper Michael D. Schreoder, the Michigan State Police, and "Jane and John Does." (Compl., ECF No. 1, PageID.1.) Plaintiff does not provide any identifying information for the "Jane and John Does." They are offered as a placeholder for those persons that might be revealed "upon receipt of future discovery and information." (*Id.*)

Plaintiff alleges that, on January 27, 2018, he had an encounter with Defendants Maleport and Shigwadja. Officer Maleport reports that after Plaintiff had run through the unit lobby doors, she instructed Plaintiff to stop and submit to a shakedown. (Misconduct Report, ECF No. 1-3, PageID.22.)[1] She claims that Plaintiff refused to obey and, instead, "began to shove [Maleport] in the chest area, and hitting [her] in the body area with both hands repeatedly." (*Id.*) Officer Shigwadja reported that when he arrived at the scene, he saw Plaintiff striking and pushing Officer Maleport. (Misconduct Report, ECF No. 1-4, PageID.24.) Shigwadja directed Plaintiff to stop and took Plaintiff down to the floor when he failed to comply. (*Id.*)

---

[1] The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)). The Court will generally accept as true the statements that Plaintiff makes in the documents he has attached to the complaint. The Court will generally not accept as true statements made by others in the documents Plaintiff attaches to the complaint except to the extent that Plaintiff relies on the truth of those statements in his complaint.

The hearing officer reviewed a video of the incident during the February 2, 2018, misconduct hearing. (Plaintiff's Aff., ECF No. 1-2, PageID.17.) The hearing officer found Plaintiff guilty of assault and battery. (*Id*.)  According to Plaintiff, the Misconduct Hearing Report discloses that the hearing officer found that "the video showed officer (Maleport) stepping in front of [Plaintiff] as [he] entered the building and that [he] pushed her away and kept walking and the[n] she stepped in front of [Plaintiff] two more times and [he] continued to shove her away." (*Id*.) Plaintiff contends that this description of the video is at odds with Maleport's recounting of the events in the original misconduct report because the video does not show "Plaintiff hitting C/O Maleport repeatedly with both hands . . . ." (Compl., ECF No. 1, PageID.3; *see also* Plaintiff's Aff., ECF No. 1-2, PageID.17.) Plaintiff contends that "[t]he variance" between what the video shows, as described by the hearing officer, and what Officer Maleport said in her Misconduct Report is "the issue." (Compl, ECF No. 1, PageID.3.) Put differently, Plaintiff's entire claim depends on there being a meaningful distinction between "shoving [Maleport] in the chest area . . . hitting her in the body area with both hands repeatedly"—the description in Officer Maleport's misconduct report—and "pushing [Maleport] away . . . and the[n] . . . continuing to shove her away" after she stepped in front of Plaintiff—the hearing officer's description in the Misconduct Hearing Report.

Plaintiff notes that Defendant Corrigan reported the incident to the state police. (State Police Incident Report, ECF No. 1-5, PageID.26.)[2] Defendant Schreoder investigated and, according to Plaintiff, prepared a "Probable Cause" Affidavit indicating that the assault charge was supported by the surveillance video and the victim statements from Maleport and Shigwadja. (Compl., ECF No. 1, PageID.5.) The initial criminal prosecution was dismissed after the

---

[2] Plaintiff provides only the first page of a five-page report. (ECF No. 1-5, PageID.26.)

prosecutor filed a motion for *nolle prosequi* on April 5, 2018. (Plaintiff's Aff., ECF No. 1-2, PageID.18–19.) The court granted the motion and dismissed the case without prejudice the same day. (ECF No. 1-8, PageID.34.)

The prosecutor commenced proceedings on the assault charge again on May 22, 2018. (Plaintiff's Aff., ECF No. 1-2, PageID.19.) The case did not proceed to trial for almost four years. On April 20, 2022, a Chippewa County Circuit Court found Plaintiff not guilty of the charged offense. (Jury Verdict, ECF No. 1-1, PageID.15.)

Plaintiff claims that he was maliciously prosecuted in violation of the Fourth Amendment. (Compl., ECF No. 1, PageID.4–8.) Plaintiff also contends that Defendants conspired to violate his substantive due process rights under the Fourteenth Amendment. (*Id*., PageID.8–9.) Further, Plaintiff alleges that Defendants violated his Eighth Amendment rights by subjecting him to the degradation, humiliation, and embarrassment attendant to a criminal prosecution. (*Id*., PageID.9–10.) Finally, Plaintiff argues that the criminal prosecutions were commenced in retaliation for Plaintiff's filing of a grievance against Defendant Maleport and, therefore, the prosecutions violated his First Amendment rights. (*Id*., PageID.10.) Plaintiff also purports to raise a second substantive due process claim, but he does not provide separate allegations regarding that claim. (*Id*.)

Plaintiff seeks declaratory relief, injunctive relief, compensatory damages and punitive damages.

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As explained above, Plaintiff claims that the Defendants' conduct violated his First, Fourth, Eighth, and Fourteenth Amendment rights.

### A.    Other "Defendants" Mentioned in the Complaint

*Pro se* pleadings are to be liberally construed, but even liberal construction has its bounds. Federal Rule of Civil Procedure 10(a) requires that the Plaintiff "name all of the parties" in "[t]he

title of the complaint." Fed. R. Civ. P. 10(a). There are many individuals that are mentioned in Plaintiff's complaint, and even accused of improper actions, that are not named in the caption of the complaint: Dan Rambo, Daniel Bergsma, Roxanne Bosley, Catherine C. Maleport, Tammy Schroeder, Robert L. Stratton, III, Jennifer J. France, Chad W. Peltier, and Benjamin LaLiberate. They are identified as co-conspirators with regard to the wrongful conduct, (Compl., ECF No. 1, PageID.3–5, 8–9), and Plaintiff asks the Court to enter a judgment against them for punitive damages (*id.*, PageID.11).

This Court has concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10 CV 568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R&R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" are not parties in the action);[3] *Schorn v. Mack*, No. 94-1747, 1995 WL 37931 (6th Cir. Jan. 31, 1995) (affirming district court's dismissal of complaint which included dismissal of a party named as a defendant in the body of the complaint who had not been named as a defendant in the caption and affirming the district court's decision to not allow amendment to correct the omission).

The only defendants named in the caption are Defendants Maleport, Shigwadja, Corrigan, Schreoder, the Michigan State Police, and the "Jane and John Does." (Compl., ECF No. 1,

---

[3] The Court's approved form complaint includes a section that invites the prisoner to identify each party. *See* Prisoner Civil Rights Complaint Form under 42 U.S.C. § 1983, https://www.miwd.uscourts.gov/prisoner-forms (last visited Oct. 4, 2024). Plaintiff did not use the approved form complaint; thus, the only definitive source of the parties' names is the caption.

PageID.1.) Those are the only defendants to this action. Other persons named in the complaint are non-parties. To the extent Plaintiff intended to raise claims against the other persons, those claims are properly dismissed.[4]

### B.    Jane and John Doe Defendants

Plaintiff's use of the Jane Doe and John Doe device to bring in an unidentified number of additional defendants is unusual in that he does ***not*** allege that there are individuals who took particular actions but he cannot identify them because he does not know their names. He simply reserves the right to amend to add Jane Doe and John Doe defendants if any other parties should be revealed in the future.

In *Kissner v. Orr*, No. 22-2076, 2023 WL 5687037, at *4 (6th Cir. Aug. 31, 2023), the Sixth Circuit described the proper use of "John Doe" parties. In *Kissner*, the Plaintiff intended to sue the emergency dispatch officer who answered the 911 call that led to Plaintiff's being taken into custody. He did not know the officer's name. The court concluded that "Plaintiffs are permitted to bring suit against unnamed 'John Doe' defendants until discovery or other information reveals the identity of the party." *Id.* (quoting *Brown v. Owens Corning Inv. Rev. Comm.*, 622 F.3d 564, 572 (6th Cir. 2010), *abrogated on other grounds by Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S.Ct. 768 (2020)). In *McNeal v. Hargett*, No. 1:20-cv-596, 2023 WL 5057948 (W.D. Mich. May 22, 2023), *R & R adopted in relevant part*, 2023 WL 4311397, at *8 (W.D. Mich. Jul. 3, 2023), this Court considered the proper use of the John Doe pseudonym, explaining:

> In his amended complaint, Plaintiff names as defendants an unidentified number of John Does. Plaintiff makes no factual allegations in his amended complaint against

---

[4] It is possible that this list of defendants is an artifact from a case Plaintiff filed in the Ingham County Circuit Court on November 3, 2020. *Williams v. Maleport et al.*, No. 20-000624-PZ (Ingham Cnty. Cir. Ct.). That action was dismissed on November 21, 2021. (Compl., ECF No. 1, PageID.1.) Plaintiff filed a motion for relief from judgment in that case based on the verdict of acquittal. (*Id.*) That motion, filed more than two years ago, remains pending. (*Id.*)

any John Does. Instead, Plaintiff states that he added these John Does to his amended complaint in the event he later learns that such persons "were involved in or responsible for the MDOC policies and actions" that violated his rights. It is not proper for a plaintiff to name persons as defendants in the event subsequent facts support claims against them. The proper approach is, once a plaintiff learns of facts supporting additional claims or causes of action, to move the Court to amend the complaint. Accordingly, the undersigned recommends that the John Doe Defendants be dismissed from Plaintiff's amended complaint.

*Id*. at *6. The same approach is warranted in this case.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Plaintiff fails to allege any facts regarding the actions or inaction of the "Jane and John Doe" defendants in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Plaintiff's claims against the Doe defendants, therefore, will be dismissed.

### C.    Defendant Michigan State Police

Plaintiff may not maintain a § 1983 action against the Michigan State Police. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Sixth Circuit has specifically held that the Michigan State Police department is absolutely immune from a § 1983 suit under the Eleventh Amendment. *Lavrack v. City of Oak Park*, No. 98-1142, 1999 WL 801562, at *2 (6th Cir. Sept. 28, 1999). Therefore, Plaintiff's claim against the MDOC is properly dismissed on grounds of immunity.

In addition, the State of Michigan (acting through the Michigan State Police) is not a "person" who may be sued under § 1983 for money damages. *See Id.*; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Therefore, Plaintiff's claim against the Michigan State Police also is properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b), and 42 U.S.C. § 1997e(c).

### D.        Malicious Prosecution

In *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), the Sixth Circuit recognized the existence of a claim of malicious prosecution arising under the Fourth Amendment, which is cognizable under § 1983. *Id*. at 308 (citing *Wallace v. Kato*, 549 U.S. 384, 390 n.2 (2007)) (assuming without deciding that such a claim existed). The *Sykes* court held that, to succeed on a Fourth Amendment malicious prosecution claim, a plaintiff must show that: (1) a prosecution was initiated against the plaintiff and that the defendant participated in the decision; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty as a consequence of the legal proceedings; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Id*. at 308–09; *see also Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing Sykes, 625 F.3d at 308–09); *Gregory v. City of Louisville*, 444 F.3d 725, 727 (6th Cir. 2006). There is no right to be free from malicious prosecution arising outside of the Fourth Amendment context. *Johnson v. Ward*, 43 F. App'x 779, 782 (6th Cir. 2002) (citing *Spurlock v. Satterfield*, 167 F.3d 995, 1006 n. 19 (6th Cir. 1999)).

Plaintiff's claim fails at the first step with regard to Defendants Maleport, Shigwadja, and Corrigan. There are no facts alleged in Plaintiff's complaint that support an inference that Correctional Officers Maleport or Shigwadja participated in the decision to initiate prosecution. They simply prepared misconduct reports. Similarly, Inspector Corrigan did nothing more than invite the Michigan State Police to investigate the assault allegations.

There can be little doubt that the misconduct reports of Maleport and Shigwadja started the process, but simply providing information to police is not the same as initiating a prosecution. In *Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009), the Sixth Circuit Court of Appeals explained:

> Under Michigan law, a plaintiff may maintain a [state-law] claim of malicious prosecution "against a private person" where the plaintiff offers "proof that the private person instituted or maintained the prosecution and that the prosecutor acted on the basis of information submitted by the private person that did not constitute probable cause." *Matthews v. Blue Cross & Blue Shield*, 456 Mich. 365, 572 N.W.2d 603, 610 (1998). Michigan law, however, also recognizes that a criminal prosecution "is initiated in the sole discretion of the prosecutor." *Id*. at 605. This is critical because, as the Michigan Supreme Court explained in *Matthews*, the intervening and "independent exercise of prosecutorial discretion establishes that the private defendant did not initiate the prosecution." *Id*. at 613. Thus, if the police or the prosecutor initiate the prosecution on the basis of evidence obtained through their own independent investigation, the complaining victim is insulated from liability. *Id*. at 613 n. 28 ("'The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.'" (quoting 3 Restatement Torts 2d § 653, cmt. g)). "Thus, in Michigan, the prosecutor's exercise of his independent discretion in initiating and maintaining a prosecution is a *complete defense* to an action for malicious prosecution." *Id*. at 613 (emphasis added).
>
> That is precisely the case here. As noted above, although [the victim/witness's] identification of Moldowan as one of her attackers certainly was critical to the Macomb County Prosecutor's decision to prosecute him, her statements were only part of a broader, independent investigation. Under controlling Michigan authority, the exercise of independent judgment and discretion on the part of the police and the prosecutor precludes, as a matter of law, a malicious prosecution claim against [the victim/witness].

578 F.3d at 399–400.

The decision to prosecute Plaintiff was also prompted by an investigation that went beyond the testimony of Maleport and Shigwadja. Critically, the investigation included review of a video recording of the incident. Certainly, neither Maleport nor Shigwadja are purely "private persons" as was the victim/witness in *Moldowan*; but they are entitled to the protections afforded to "private persons" in this context.[5] *See, e.g.*, *Zavatson v. City of Warren, Mich.*, 714 F. App'x 512, 520 (6th Cir. 2017) (concluding that public school officials who "persisted in making false or reckless

---

[5] But even if Defendants Maleport, Shigwadja, and Corrigan influenced the prosecution as contemplated by *Sykes*, Plaintiff's malicious prosecution claim against them would fail at the second step, as discussed below with regard to Defendant Schreoder.

statements about Zavatson's responsibility for the theft" "even in their capacity as school officials," were not exposed to liability for false arrest, for "[p]roviding information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial"); *Goodell v. Malkin*, No. 20-10293, 2020 WL 5985202, at *4 (E.D. Mich. Feb. 19, 2020), *R&R adopted*, 2020 WL 4364065 (July 30, 2020), *aff'd*, No.20-1862, 2021 WL 4050629 (6th Cir. July 26, 2021) (collecting cases that extend the principles of *Moldowan* to cover private reports of crime made by state employees).

Plaintiff alleges that Defendant Schreoder provided a sworn affidavit to support the probable cause determination. (Compl., ECF No. 1, PageID.5, ¶ 18.) Those allegations support an inference that Schreoder "made, influenced or participated in the decision to prosecute the plaintiff by . . . making . . . statements that are material to the prosecution either in reports or in affidavits filed to secure warrants." *King v. Harwood*, 852 F.3d 568, 583 (6th Cir. 2017) (citation and internal quotation marks omitted).

Plaintiff's claim fails, nonetheless, at the second step because, based on Plaintiff's allegations in the complaint, there was probable cause to prosecute Plaintiff for assault. The premise of Plaintiff's malicious prosecution claim is that Defendant Maleport lied in her misconduct report. Specifically, Plaintiff states that Maleport "manufactured facts in her report (with reckless disregard for the truth) as to ***how*** she claimed the plaintiff assaulted her." (Compl., ECF No. 1, PageID.3 (emphasis added).) Plaintiff explains that Maleport's report is revealed to be false by "[t]he variance" between the assault as reported by the Hearing Officer after reviewing the video and Maleport's initial report. The Misconduct hearing report indicates that:

> Prisoner Williams "pushed" Maleport away and keeps walking or otherwise rammed into her and pushed her many times before entering the dayroom . . . .

(*Id*., PageID.7.) Defendant Maleport, on the other hand, describes the incident as:

12

> Williams shoving her and then hitting her in the body area "With Both Hands Repeatedly."

(*Id*.) The variance, apparently, is the claim that Plaintiff hit Maleport in the body area with both hands repeatedly. Plaintiff clarifies the point in his affidavit:

> Maleport misrepresented facts when stating that I hit her with both hands repeatedly.

(Plaintiff's Aff., ECF No. 2, PageID.17.)[6] Plaintiff's allegations make clear, therefore, that the pushing/shoving that is mentioned in both accounts actually occurred.

For a couple of reasons, Plaintiff's claim about the "variance" fails to show a lack of probable cause. First, saying that Plaintiff pushed and shoved Maleport might well include hitting Maleport in the body area with both hands. The Cambridge English Dictionary includes in the definition of "push" the following: "to use physical pressure or force, especially with your hands, in order to move something into a different position, usually one that is farther away from you." *Push*, Cambridge Dictionaries Online, https://dictionary.cambridge.org/us/dictionary/ english/push (last visited Oct. 4, 2024). It is entirely possible—indeed, based on Plaintiff's own description it is likely—that Plaintiff shoved Maleport repeatedly with his hands. If so, it is no stretch to describe that activity as hitting her in the body area with his hands repeatedly.

Second, even if the pushing and shoving could not be characterized as Plaintiff hitting Maleport in the body area repeatedly with his hands, the video showing the pushing and shoving with nothing more would provide probable cause to conclude that Plaintiff had committed the crime of assault on a prison employee. "Probable cause requires a quantum of evidence 'sufficient

---

[6] The affidavit states further: "the Hearing Officer's report says the video showed officer (Maleport) stepping in front of me as I entered the building and that I pushed her away and kept walking, and the[n] she stepped in front of me two more times and I continued to shove her away. The Hearing report conflicts with Maleport's ticket of me hitting her repeatedly . . . ." (Plaintiff's Aff., ECF No. 1-2, PageID.17.)

to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief'

of the accused's guilt." *People v. Yost*, 659 N.W.2d 604, 607 (Mich. 2003) (quoting *People v.*

*Justice (Aft. Rem.)*, 562 N.W.2d 652, 657 (Mich. 1997)).

> Assault on a prison employee occurs when:
>
> A person lawfully imprisoned in a . . . place of confinement . . . who, without being
> discharged from the place of confinement . . . through the use of violence, threats
> of violence or dangerous weapons, assaults an employee of the place of
> confinement . . . knowing the person to be an employee . . . .

Mich. Comp. Laws § 750.197c(1). The Model Criminal Jury Instruction for the offense reads as

follows:

> (1) The defendant is charged with the crime of assaulting an employee of [state
> place of confinement]. To prove this charge, the prosecutor must prove each of the
> following elements beyond a reasonable doubt:
>
> (2) First, that the defendant was legally confined at [state place of confinement].
>
> (3) Second, that [name complainant] was employed at [state place of confinement].
>
> (4) Third, that the defendant knew that [name complainant] was an employee or
> custodian at [state place of confinement].
>
> (5) Fourth, that the defendant assaulted [name complainant]. An assault is an
> attempt to commit a battery or to do something that would cause someone to fear a
> battery. A battery is a forceful, violent, or offensive touching of the person. An
> assault cannot happen by accident.
>
> (6) Fifth, that the defendant committed the assault through the use of violence, a
> threat to use violence, or the use of a dangerous weapon. Violence is the use of
> physical force likely to cause embarrassment, injury, death, or harm. A dangerous
> weapon is an instrument that is used in a way that is likely to cause serious physical
> injury or death.

Mich. Model Crim. Jury Instr. 13.15. A prisoner pushing and shoving a corrections officer seems

to fit every element of the offense.

Even though a jury acquitted Plaintiff, an acquittal does not mean that Defendants lacked

probable cause. *See Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005) (noting that "not

every failed criminal prosecution will sustain a subsequent malicious-prosecution suit"). Whatever roles the corrections officers, the hearing investigator and the state trooper played in furthering Plaintiff's prosecution, the pushing and shoving that were evidenced in the video, the Hearing Officer's report, and the Misconduct Reports filed by Defendants Maleport and Shigwadja— pushing and shoving that Plaintiff does not dispute in his complaint—serve as a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief that Plaintiff was guilty of using violence to assault Defendant Maleport. Because Plaintiff cannot show a lack of probable cause for his prosecution, he has failed to state a malicious prosecution claim.[7]

Finally, a Fourth Amendment claim of malicious prosecution requires at its core that the plaintiff suffer "a 'deprivation of liberty'" as a result of the legal proceeding. *Sykes*, 625 F.3d at 308–09 (quoting *Johnson v. Knorr,* 477 F.3d 75, 81 (3d Cir. 2007)). Even a person criminally charged and prosecuted cannot maintain a claim for malicious prosecution if he suffers no deprivation of liberty through arrest or incarceration. *Cummin v. North*, 731 F. App'x 465, 470 (6th Cir. 2018). Additionally, the Sixth Circuit has held that if there is one valid reason to deprive a person of his liberty, that forecloses a malicious prosecution claim on another charge. *See Howse*

---

[7] Plaintiff suggests that he might also have state law claims. The State of Michigan recognizes a tort of "malicious prosecution:"

> In order to state a prima facie case of malicious prosecution, the plaintiff must prove: (1) prior proceedings terminated in favor of the present plaintiff, (2) absence of probable cause for those proceedings, (3) malice, and (4) a special injury that flows directly from the prior proceedings.

*Scott v. Dep't of Corr.*, No. 219726, 2000 WL 33419366, at *1 (Mich. Ct. App. May 30, 2000). Because the state tort of malicious prosecution also requires the absence of probable cause, Plaintiff has also failed to state that state law claim.

*v. Hodous*, 953 F.3d 402, 408–10 (6th Cir. 2020).[8] In this action, Plaintiff does not allege—and cannot allege—that he suffered a deprivation of liberty as a consequence of the legal proceeding because, at the time that the prosecution was initiated, Plaintiff was already imprisoned for other crimes. Because Plaintiff did not suffer a deprivation of liberty as a consequence of the legal proceeding, there is nothing of which Plaintiff could have been deprived for Fourth Amendment purposes.

Accordingly, for all of the reasons set forth above, the Court will dismiss Plaintiff's malicious prosecution claims.

### E.     Conspiracy to Violate Plaintiff's Substantive Due Process Rights

Plaintiff's second claim is based on entirely conclusory allegations that Defendants and several others:

> [u]pon information and belief . . . the conspiracy was formed against the plaintiff because of Nepotism and the fiduciary relationship that existed between [all persons and entities involved in his prosecution who are] all agents and employees related one-to-another, and to correctional personnel employed both at Kinross and Chippewa Correctional Facilities.

(Compl., ECF No. 1, PageID.8–9.) That is the entirety of Plaintiff's conspiracy allegations.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy

---

[8] In *Howse*, the Sixth Circuit acknowledged that some circuits have resolved the issue differently. *See, e.g.*, *Howse*, 953 F.3d at 409 n.3 (citing cases); *see also id.* at 411–16 (citing cases) (Cole, C.J., dissenting). However, the Sixth Circuit's decisions in *Sykes* and *Howse* bind this Court.

caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).

Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). A conspiracy claim fails when a plaintiff alleges facts showing that the defendants acted together but does not allege facts showing that the parties agreed to an objective to deprive the plaintiff of his civil rights. *See Siefert v. Hamilton Cnty. Bd. of Comm'rs*, 951 F.3d 753, 768 (6th Cir. 2020).

Plaintiff does not allege that the Defendants "agreed" to do anything. He premises his conspiracy claim on the fact that all of the Defendants are somehow related. Absent particular allegations of fact to support Plaintiff's claim of conspiracy, the claim is properly dismissed.

Even if Plaintiff had mentioned the elements of a conspiracy claim, his allegations fall short with respect to the substantive due process claim that purportedly lies at the heart of the conspiracy. The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga*

*Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007). But the videorecording of the incident, as described by Plaintiff in his complaint, forecloses any claim that Plaintiff was framed.

Plaintiff does not identify the "conscience shocking" conduct. In fact, once the crux of Plaintiff's complaint is clear—that he pushed and shoved, but did not hit with his hands repeatedly—the Defendants' conduct in pursuing disciplinary proceedings and a criminal prosecution is not "shocking" at all. Even if, as Plaintiff suggests, Maleport embellished the severity of Plaintiff's assault in the misconduct report, the hearing officer's words from the Misconduct Hearing Report—as reported by Plaintiff—indicate that the hearing officer appears to have based the finding of guilt on the video, not any purported embellishment by Defendant Maleport. Moreover, the embellishment did not survive into the criminal prosecution. Plaintiff alleges that Maleport's testimony at the preliminary examination was limited to Plaintiff pushing her; she specifically denied that Plaintiff punched her. Because Plaintiff has failed to allege facts that might support an inference that any Defendant egregiously abused government power or

engaged in conduct that shocks the conscience, he has failed to state a claim for violation of his substantive due process rights.

### F.    Eighth Amendment Violation

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff claims that, as a result of Defendants' pursuit of a criminal prosecution without probable cause he was subjected to invasive strip searches that were degrading, humiliating, and embarrassing and he now suffers from high blood pressure because of the emotional and physiological stress attendant to the wrongfully initiated prosecution for a crime that carried a potential life sentence. (Compl., ECF No. 1, PageID.9, ¶ 29.) Plaintiff does not identify any particular conduct by the searchers that might rise to the level of cruel and unusual punishment.

19

Instead, Plaintiff seems to suggest either (a) strip searches before and after every trip to court was unreasonable; or (b) the strip searches before and after trips to court in this instance was unreasonable because there was no probable cause to justify prosecuting Plaintiff.

Plaintiff's contention that strip searches are generally unconstitutional before and after a trip outside the prison context is unsupportable. *See, e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 558 (1979) (considering the propriety of "a strip search conducted after every contact visit with a person from outside the institution" that "required [inmates] to expose their body cavities for visual inspection" and concluding "that these searches do not violate [the Fourth] Amendment . . . and under the circumstances, we do not believe that these searches are unreasonable" (footnotes omitted)); *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318 (2012) (concluding that strip search including visual inspection of persons coming into the prison was reasonable); *Mowatt v. Visser*, No. 93-1539, 1993 WL 503773, at *3 (6th Cir Dec. 8, 1993) (stating that "the prison regulation of requiring strip searches before and after contact visits and before and after appointments scheduled outside the prison is justifiable and is not an exaggerated response to prison concerns. *See Turner v. Safley*, 482 U.S. 78, 89–90 (1987)").

Moreover, Plaintiff's claim that the searches were unreasonable because there was no probable cause to prosecute Plaintiff is completely undercut by the Court's conclusion that, based on the facts alleged in the complaint, Defendants had probable cause to prosecute Plaintiff. A strip search of a prisoner before and after a trip outside the prison is reasonable and, even though the Court concludes there was probable cause to prosecute, the strip searches that Plaintiff endured would not be rendered unreasonable by a lack of probable cause for the prosecution. For these reasons, Plaintiff has failed to state a claim that the strip searches were unconstitutional.

G.      First Amendment Retaliation

Plaintiff contends that Defendants initiated the criminal prosecution against him in retaliation for Plaintiff's filing of a grievance against Defendant Maleport. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Moreover, initiation of criminal proceedings with a potential life sentence could certainly deter a person of ordinary firmness from engaging in protected conduct. Plaintiff's claim fails, however, at the third step. He does not allege any facts to support the inference that the persons who initiated the criminal prosecution—the prosecutor and/or the Michigan State Police—were motivated by Plaintiff's grievance against Defendant Maleport. Moreover, it would be absurd to suggest that Maleport submitted the misconduct report in retaliation for Plaintiff's grievance where the misconduct report preceded the grievance.

"Retaliation" is easy to allege and it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th

21

Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Plaintiff does nothing more than use the word retaliation in his complaint. He fails to connect the adverse action—initiating the criminal prosecution—with the protected conduct— filing a grievance against Defendant Maleport after Plaintiff was found guilty of the misconduct. Therefore, Plaintiff has failed to state a claim for First Amendment retaliation.

## III. Plaintiff's Pending Motion

Plaintiff filed a motion (ECF No. 7) asking the Court to appoint counsel and to order service of the complaint. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action

without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel will be denied.

Moreover, because the Court concludes that Plaintiff has failed to state a claim upon which relief can be granted, service of the complaint would not be appropriate. Accordingly, Plaintiff's request for service of the complaint will be denied.

<u>**Conclusion**</u>

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will deny Plaintiff's request to appoint counsel and serve the complaint. (ECF No. 7.)

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   October 8, 2024                            /s/ Robert J. Jonker
                                                    Robert J. Jonker
                                                    United States District Judge